UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ECONOMIC DEVELOPMENT GROWTH
ENTERPRISES CORPORATION and UTICA
INDUSTRIAL DEVELOPMENT CORPORATION,

                  **Plaintiffs-Appellants,**

      v.                                      6:10-CV-696
                                                         (FJS)

EDWARD J. MCDERMOTT,

                  **Defendant-Appellee.**
_____

**APPEARANCES**                                **OF COUNSEL**

**SAUNDERS KAHLER, L.L.P.**          **MERRITT S. LOCKE, ESQ.**
185 Genesee Street
Suite 400
Utica, New York 13501
Attorneys for Plaintiffs-Appellants

**FELT EVANS, LLP**                     **EDWARD D. EARL, ESQ.**
4-6 North Park Row
Clinton, New York 13323
Attorneys for Defendant-Appellee

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Plaintiffs-Appellants' appeal from the U.S. Bankruptcy Court for the Northern District of New York's Memorandum-Decision and Order dated May 4, 2010, in which it dismissed Plaintiffs-Appellants' claims that Defendant-Appellee's debts were non-dischargeable under the Bankruptcy Code.

## II. BACKGROUND

Plaintiffs-Appellants Economic Development Growth Enterprises Corporation ("EDGE") and Utica Industrial Development Corporation ("UIDC") made loans to Defendant-Appellee Edward J. McDermott in exchange for two promissory notes, secured by perfected security agreements for certain collateral. Defendant-Appellee was attempting to grow two now-insolvent corporations of which he was an officer and director — Integrated Sensors, Inc. ("ISI") and Sensor Applications, Inc. ("SAI").

Defendant-Appellee and the two corporations ultimately defaulted on both the EDGE and UIDC promissory notes; and, by December 31, 2005, the corporations ceased all operations and had become insolvent. In January 2006, in the process of winding down the corporations' affairs, Defendant-Appellee retained counsel to provide advice on how to best liquidate their assets and pay off creditors. On July 27, 2006, Defendant-Appellee filed a petition for Chapter 7 bankruptcy. The instant appeal before this Court involves disputed issues concerning the dischargeability of the debt that Defendant-Appellee owes to Plaintiffs-Appellants.

In the Bankruptcy Court proceeding, Plaintiffs-Appellants asserted the following two causes of action, violations of which, they argued, required a determination that Defendant-Appellee's debt was non-dischargeable: (1) for breach of fiduciary duty by fraud or defalcation pursuant to 11 U.S.C. § 523(a)(4) and (2) for wilful and malicious injury pursuant to § 523(a)(6).

In their first cause of action under § 523(a)(4), Plaintiffs-Appellants contended that Defendant-Appellee, as an officer and director of the two insolvent corporations, owed a

fiduciary duty to the corporations' creditors to preserve the remaining assets for their benefit and that any intercompany transfers should have ceased until all of the corporations' creditors were paid. Plaintiffs-Appellants' second cause of action was based on allegations that Defendant-Appellee willfully and maliciously injured them pursuant to § 523(a)(6).

In its Memorandum-Decision and Order, the Bankruptcy Court dismissed Plaintiffs-Appellants' claims based on its finding that Defendant-Appellee's debt to Plaintiffs-Appellants was dischargeable under Bankruptcy Code §§ 523(a)(4) and 523(a)(6). *See* Dkt. No. 1-5, Bankruptcy Court Memorandum-Decision and Order dated May 4, 2010. On June 16, 2010, Plaintiffs-Appellants filed a Notice of Appeal in this Court, *see* Dkt. No. 1, and submitted a brief in support thereof on July 27, 2010, *see* Dkt. No. 5. On September 7, 2010, Defendant-Appellee filed a brief in opposition thereto. *See* Dkt. No. 7. On September 27, 2010, Plaintiffs-Appellants submitted a reply brief in further support of their appeal. *See* Dkt. No. 8.

## DISCUSSION[1]

### A.    Standard of review

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts under 28 U.S.C. § 158(a). *See* 28 U.S.C. § 158(a). When reviewing a bankruptcy court's findings of fact, a district court reviews for clear error only and accepts its factual findings unless they are clearly erroneous. *See Ames Dep't Stores, Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores, Inc.)*, 470 B.R. 280, 283 (S.D.N.Y. 2012) (citations

---

[1] The Court has reviewed the Bankruptcy Court's factual findings for clear error, and, having found none, accepts those findings for purposes of resolving this appeal.

omitted). The bankruptcy court's legal conclusions, however, are subject to *de novo* review. *See id.* (citations omitted).

**B.     Plaintiffs-Appellants' claims pursuant to Bankruptcy Code § 523(a)**

Pursuant to Bankruptcy Code § 523(a), 11 U.S.C. §§ 101-1532, courts narrowly construe the limited exceptions to the discharge of a debt and resolve any genuine doubts in favor of the debtor. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007) (citations omitted). It is a creditor's burden to establish non-dischargeability by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991). Plaintiffs-Appellants contend that Defendant-Appellee's debts are non-dischargeable under Bankruptcy Code §§ 523(a)(4) and 523(a)(6).

   *1. Bankruptcy Code § 523(a)(4)*

Bankruptcy Code § 523(a)(4) provides that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). When answering the question of whether to hold a debt non-dischargeable for fraud or defalcation while acting in a fiduciary capacity, a court must first make the threshold determination of whether a fiduciary relationship existed between the debtor and creditor. *See Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999) (citations omitted). In this case, the Bankruptcy Court determined that Defendant-Appellee was not acting in a fiduciary capacity. *See* Bankruptcy Court Memorandum-Decision and Order at 17.

"Under New York law, directors of an insolvent corporation owe a fiduciary duty to preserve the assets of the corporation for the benefit of creditors." *Hughes v. BCI Int'l Holdings*,

452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006) (citation omitted); *Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981) (holding that courts properly consider the officers and directors of an insolvent corporation as trustees of the property for the benefit of the corporation's creditors (quotation omitted)); *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 202 (S.D.N.Y. 2009) (stating that, under the "trust fund doctrine," directors and officers of a fully insolvent corporation owe a fiduciary duty to hold remaining corporate assets in trust for the benefit of its creditors (citations omitted)). Furthermore, "the duty owed by directors to creditors of an insolvent corporation exists only to ensure that the directors do not funnel the assets of the corporation to themselves or to other shareholders, subverting the creditor's rights in bankruptcy." *Geren v. Quantum Chem. Corp.*, No. 95-7554, 1995 WL 737512, *1 (2d Cir. Dec. 13, 1995) (citation omitted).

In this case, the two corporations became insolvent no later than January 1, 2006. Defendant-Appellee was one of two directors and one of three common shareholders of SAI and ISI, and he used his position to cause ISI to repay $90,000 on an outstanding debt that SAI (not ISI) owed to the SBA, which he had also personally guaranteed with a mortgage on his home. Contrary to the Bankruptcy Court's holding, the Court finds that, under New York law, Defendant-Appellee was placed in the position of fiduciary when SAI and ISI became insolvent and Defendant-Appellee began liquidating remaining corporate assets.

The Bankruptcy Court "[was] of the view that the 'equity-like interest' created under the 'trust fund doctrine' is insufficient for purposes of Code § 523(a)(4), particularly in light of the fact that it has application only to derivative claims asserted on behalf of a corporation and not to any direct claims like those of the Plaintiffs." *See* Bankruptcy Court Memorandum-Decision and

Order at 15.  However, in deciding that a creditor of an insolvent corporation has no right to assert a *direct claim* against officers and directors of an insolvent corporation for purposes of Bankruptcy Code § 523(a)(4), the Bankruptcy Court relied primarily on non-New York state law.  *See id.* at 14-16.  New York law does not support this limitation on the trust fund doctrine.  *See RSL Commc'ns PLC*, 649 F. Supp. 2d at 202 (citations omitted).  The Bankruptcy Court stated that such a holding "would arguably expand non-dischargeability to any and all creditors with claims against the assets of insolvent corporations."  *See* Bankruptcy Court Memorandum-Decision and Order at 15.  This concern, however, is needless, since, in order to establish non-dischargeability under § 523(a)(4), a moving party must still establish "fraud or defalcation" under the statute.  *See* 11 U.S.C. § 523(a)(4).

Thereafter, the Bankruptcy Court went on to hold that, even if it "were to conclude that the relationship created under the 'trust fund doctrine' was sufficient to create a fiduciary relationship between the Debtor and the Plaintiffs in applying Code § 523(a)(4)," Plaintiffs-Appellants had not met their additional burden of establishing fraud or defalcation on the part of Defendant-Appellee in the course of that relationship.  *See* Bankruptcy Court Memorandum-Decision and Order at 16-17.  We agree.

In order to establish fraud under the Bankruptcy Code, as with a common law fraud claim, a plaintiff must demonstrate "a false representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury."  *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006) (citation omitted).  To establish the requisite actual fraudulent intent on the part of the debtor in making a transfer, courts may look to certain "badges of fraud" from which an inference of fraudulent

intent may be drawn, including (1) inadequate consideration, (2) the relationship between the parties, (3) "the retention of possession, benefit or use of the property" transferred, (4) the debtor's financial condition, (5) whether a pattern of questionable transactions exists, and (6) the chronology of the transactions at issue. *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 315-16 (S.D.N.Y. 1999) (quoting [*Salomon v.*] *Kaiser* [(*In re Kaiser)*], 722 F.2d [1574,] 1582 [(2d Cir. 1983)]).

After ISI had ceased its business operations, Defendant-Appellee transferred monies from ISI to SBA in order to satisfy a debt for which ISI had no corporate obligation, but for which SAI and Defendant-Appellee were liable. Plaintiffs-Appellants contend that this transfer violated their security interests. The Bankruptcy Court, however, found that

> the evidence indicates that by paying the debt owed to the SBA, the Debtor was able to reduce his personal obligations stemming from his guarantee to the SBA, which was secured by his residence. While Plaintiffs take the position that this constituted a wrongful dissipation of ISI's assets in which they had a security interest, the record shows that [the National Bank and Trust Company ("NBT"), a non-party creditor's] security interest was superior to Plaintiffs in priority, and significant enough in amount, such that none of the proceeds would have reached Plaintiffs' security interest had the proceeds, in fact, been used to pay ISI's creditors.

*See* Memorandum-Opinion and Order at 17.

Plaintiffs-Appellants assert that several "badges of fraud" are present in the instant case. Specifically, they argue that (1) SBA provided no consideration for the monies ISI paid; (2) there was a close relationship between ISI, SAI, and Defendant-Appellee in that Defendant-Appellee was one of two directors and one of three common shareholders of SAI and ISI, and he was able to use his position with ISI to pay off SAI's debt for which he had personally guaranteed; and (3)

Defendant-Appellee retained the full benefit of the monies ISI transferred to SBA because he had personally guaranteed, by way of a collateralized mortgage on his home, the promissory note that SAI executed in favor of the SBA in the amount of $118,300. *See* Dkt. No. 5 at 14-15.

At the time SAI and ISI ceased their business operations, SAI owed SBA approximately $108,000; and, as stated, Defendant-Appellee caused ISI (not SAI) to transfer $90,000 to the SBA to pay down SAI's obligation to the SBA. Less than four months later, Defendant-Appellee filed for bankruptcy and claimed a $50,000 equity exemption in his home, which, Plaintiffs-Appellants argue, "would not have existed had Defendant-Appellee not used his position of director of ISI to pay down the SBA debt, a debt ISI was not liable for." *See* Dkt. No. 8 at 4. Defendant-Appellee subsequently sold his home and profited from that sale.

As the Bankruptcy Court found, by paying the debt owed to the SBA, Defendant-Appellee was able to reduce his personal obligations stemming from his guarantee to the SBA, which was secured by his residence. Although the facts and circumstances surrounding this transfer may tend to support Plaintiffs-Appellants' position that certain "badges of fraud" are present, this does not rebut the Bankruptcy Court's ultimate conclusion that "the record shows that NBT's security interest was superior to Plaintiffs in priority, and significant enough in amount, such that none of the proceeds would have reached Plaintiffs' security interest had the proceeds, in fact, been used to pay ISI's creditors." *See* Bankruptcy Court Memorandum-Decision and Order at 17. Nor does it establish the requisite actual fraudulent intent on the part of Defendant-Appellee. *See Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 623-24 (N.D.N.Y. 2010) (citation omitted).

The insolvent corporations' remaining assets went to pay the SBA, one creditor of SAI.

However, even if Defendant-Appellee had implemented a different liquidation plan under which the corporations had attempted to distribute their remaining assets to multiple secured creditors pro rata, Plaintiffs-Appellants' interest in the proceeds were junior to those of NBT.  Given NBT's undisputed superior interest in the account proceeds, Defendant-Appellee asserts that he reasonably believed that, by causing ISI to pay the SBA, his potential liability extended — if at all — to NBT only.  As such, the Court concludes, as the Bankruptcy Court did, that Plaintiffs-Appellants have failed establish by a preponderance of the evidence that Defendant-Appellee acted with fraudulent intent so as to render his debts non-dischargeable under § 523(a)(4).

In addition to their allegations of fraud, Plaintiffs-Appellants allege defalcation under § 523(a)(4).  To establish defalcation while acting in a fiduciary capacity under § 523(a)(4), a plaintiff must show that a defendant-debtor acted with "conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context." *In re Hyman*, 502 F.3d at 68 (citations omitted).

In its Memorandum-Decision and Order, the Bankruptcy Court held that, "assuming one existed, there is no evidence that the Debtor knew of any fiduciary duty that was owed to the Plaintiffs as creditors of ISI and SAI with respect to the accounts receivable"; that "the Debtor testified that at the time the payment was made to the SBA using the proceeds from ISI's accounts receivable, he understood that NBT had a superior interest in said proceeds"; and that this transfer was made after Defendant-Appellee obtained outside counsel in an effort to best satisfy his and the corporations' various obligations to different creditors.  *See* Memorandum-Decision and Order at 17.

For the reasons discussed above as well as those set forth in the Bankruptcy Court's

Memorandum-Decision and Order, the Court finds that Plaintiffs-Appellants have failed to establish by a preponderance of the evidence that Defendant-Appellee acted with conscious misbehavior or extreme recklessness in causing ISI to pay the SBA over other creditors. Accordingly, the Court finds that Defendant-Appellee's debt was dischargeable under § 523(a)(4). After reviewing the Bankruptcy Court's legal conclusions *de novo*, the Court finds that the Bankruptcy Court properly dismissed Plaintiffs-Appellants' claim under § 523(a)(4) because they have failed to meet their burden to establish fraud or defalcation on the part of Defendant-Appellee.

### *2. Bankruptcy Code § 523(a)(6)*

Bankruptcy Code § 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6).

To be actionable under § 523(a)(6), the debtor's conduct must have been both willful and malicious. *See Ne. Remarketing Servs., Inc. v. Guthier (In re Guthier)*, No. 08-33020, 2010 WL 1443989, *4 (Bankr. N.D.N.Y. Apr. 9, 2010) (citation omitted). The term "'[w]illful' denotes 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,'" *id.* (quotation omitted), and the term "malicious" means conduct that is "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will,'" *id.* (quotation omitted). Plaintiffs-Appellants contend that the Bankruptcy Court erred as a matter of law in finding that Defendant-Appellee's conduct was not willful and malicious so as to render his debt non-dischargeable under § 523(a)(6).

Plaintiffs-Appellants assert that the Bankruptcy Court committed clear error as it "failed

to weigh [Defendant-Appellee's] self-serving statements" with respect to the allegedly reasonable efforts he took in winding up the corporations' affairs "against the overwhelming evidence refuting those statements." *See id.* at 21. In support of this assertion, Plaintiffs-Appellants point to record evidence that Defendant-Appellee knew that Plaintiffs-Appellants had a security interest in the corporations' receivables and that Defendant-Appellee unlawfully caused ISI to pay SBA over other known creditors "to cover corporate obligations that would have been personal to Defendant-Appellee . . . ." *See id.* at 21-22. Plaintiffs-Appellants argue that "Defendant-Appellee had every incentive in the world to pay down debts which were personal to him even though he was well aware of his obligations under the security agreements." *See id.* at 23.

Furthermore, Plaintiffs-Appellants contend that Defendant-Appellee's transfer of ISI monies to pay off his own personal debt, in contravention of Plaintiffs-Appellants' security interest, constituted willful and malicious conversion under § 523(a)(6). *See* Dkt. No. 5 at 23. In defining a willful and malicious injury, "[c]onversion refers to 'an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *In re Guthier*, 2010 WL 1443989, at *4 (quotation omitted).

In *In re Guthier*, the bankruptcy court held that the defendant's conversion of proceeds owing to the plaintiff was both willful and malicious. *See id.* The court found that the defendant's actions were willful because she knew that the funds were owed to the plaintiff and malicious because, insofar as malice can be "'implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another,'" *see id.* at 5 (quotation omitted), the

-11-

defendant "admitted that she contravened her duty to remit the funds" that she owed to the plaintiff, *see id.* In the case at bar, Defendant-Appellant likely acted willfully because, in causing ISI to repay $90,000 on the outstanding debt that SAI owed to the SBA, he knowingly contravened the rights of other secured creditors to those same funds. Unlike *In re Guthier*, however, Plaintiffs-Appellants have failed to demonstrate, by a preponderance of the evidence, that Defendant-Appellee acted maliciously. After he consulted with an attorney regarding how to best satisfy his corporations' various obligations to different creditors and also limit his own liability, Defendant-Appellee reasonably concluded that he could properly pay down the SBA loan using the proceeds from ISI's accounts receivable and that his liability, if any, extended only to NBT by virtue of NBT's superior interest in said proceeds.

Accordingly, the Court finds that Plaintiffs-Appellants have not met their burden to demonstrate a willful and malicious conversion of any monies to which they were entitled when Defendant-Appellee transferred the proceeds from ISI for payment to the SBA. As such, the Court finds that Defendant-Appellee's debt was dischargeable under § 523(a)(6). After reviewing the Bankruptcy Court's findings of fact for clear error and its legal conclusions *de novo*, the Court finds that the Bankruptcy Court properly dismissed Plaintiffs-Appellants' claim seeking non-dischargeability of the debt pursuant to § 523(a)(6).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Bankruptcy Court's May 4, 2010 Memorandum-Decision and Order dismissing Plaintiffs-Appellants' claims that Defendant-Appellee's debts were non-dischargeable

under the Bankruptcy Code is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: August 7, 2012
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge